# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1653

_____

United States of America

*Plaintiff - Appellee*

v.

Robert William Dufresne, III

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 18, 2012
Filed: October 25, 2012

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Robert William Dufresne, III, pled guilty to mail fraud, in violation of 18 U.S.C. § 1341, and money laundering, in violation of 18 U.S.C. §§ 1957 and 2. Dufresne appeals his sentence, claiming the district court[1] procedurally erred in

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

(1) enhancing his sentence for obstruction of justice pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 3C1.1, and (2) denying him a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Because the district court did not err, we affirm.

## I.    BACKGROUND

On February 7, 2011, the government charged Dufresne by information with mail fraud and money laundering, alleging "all property, real or personal, involved in [the money-laundering offense] and all property traceable to such property" was subject to forfeiture in accordance with 18 U.S.C. § 982(a)(1) and (b)(1). The information charged, "[i]f any of the [specifically]-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property," pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

On February 18, 2011, Dufresne pled guilty to both charges pursuant to a written plea agreement. In the plea agreement, Dufresne admitted intentionally defrauding investors out of at least $5,241,749.15 in the following ways:

> (i) Seeking investors to supply funds purportedly for the purchase and resale of residential properties . . . with the expectation that proceeds from the sale of properties would be distributed to investors;

> (ii) Instead of using the investors['] funds substantially as promised, spending the funds for other purposes that were not approved by investors, including using the funds for [Dufresne's] personal benefit; and

> (iii) Using funds from later investors to pay off earlier investments instead of for the purchase of properties or as otherwise promised.

Dufresne additionally "agree[d] to forfeit . . . any property, real or personal, which constitute[d] or [was] derived from proceeds traceable to the mail fraud . . . [and] money laundering." Dufresne conceded such property included, but was not limited to, (1) "$3,900 in cash seized from his residence," and (2) $620,000 in funds paid to court-appointed receivers in two civil cases. Dufresne also agreed to take any necessary steps "to convey clear title to any property subject to forfeiture," and to allow the government to depose him before "sentencing to identify any assets that may be subject to forfeiture." Dufresne further agreed "not [to] contest or challenge such forfeiture on any grounds." The government "reserve[d] its right to seek the forfeiture of additional property from [Dufresne], including a money judgment forfeiture and the forfeiture of substitute assets."

The government moved for a preliminary order of forfeiture on May 2, 2011, seeking, among other things, a 2007 Ford Mustang and a 2010 Harley Davidson motorcycle. The district court granted this motion on May 18, 2011.

During his May 13, 2011 deposition, Dufresne reported selling the Mustang through a third party he knew only as "Stevo." Dufresne said he either lost the sale proceeds or "somebody took" the proceeds while Dufresne was intoxicated. Dufresne testified he gave the motorcycle to somebody he knew only as "Jako," who was attempting to assume Dufresne's bank loan on the motorcycle.

Later investigation identified "Stevo" as Steven Johnson and "Jako" as John Marcellus. Dufresne tried to transfer the motorcycle's title to Marcellus on May 15, 2011.

Agents executing seizure warrants at Dufresne's home on May 20, 2011, could not locate the Mustang or the motorcycle. Johnson said he sold the Mustang for $34,000 in cash, giving Dufresne $31,000 and keeping $3,000, which included paying a $1,000 debt Dufresne owed Johnson and $2,000 Dufresne asked Johnson to

hold. Johnson relinquished the $2,000 to the government. Agents seized the motorcycle from Marcellus, who claimed Dufresne asked him to sell it.

At sentencing on March 6, 2012, the district court enhanced Dufresne's sentence pursuant to U.S.S.G. § 3C1.1 for obstruction of justice because Dufresne (1) sold "an asset that was subject to forfeiture," namely, the Mustang; (2) "failed to turn over the proceeds of [that] sale"; (3) "caused the government to expend additional resources to locate assets"; and (4) falsely stated he "lost the proceeds from the sale of the [M]ustang." The district court disbelieved Dufresne's "assertion that he did not know the [M]ustang or the motorcycle were subject to forfeiture, or that he lost the proceeds from the sale of the [M]ustang." The district court also denied Dufresne's motion to reduce his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because it found Dufresne "sold assets that he should have known were subject to forfeiture," and "was not immediately forthright in accounting for the sale of the [M]ustang or the attempted transfer of title to the motorcycle."

Dufresne appeals his within-Guidelines sentence of 97 months imprisonment, claiming the district court procedurally erred in enhancing his sentencing for obstruction of justice and denying him a downward adjustment for acceptance of responsibility.

## II.    DISCUSSION

We review the district court's factual findings for clear error and its application of the Guidelines de novo. See United States v. Flying By, 511 F.3d 773, 778 (8th Cir. 2007).

### A.    Obstruction of Justice

U.S.S.G. § 3C1.1 provides for increasing the total offense level

[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

Dufresne argues the district court clearly erred because it erroneously believed "the Mustang and the motorcycle were tainted assets and that . . . the plea agreement . . . provided for their forfeiture," whereas the assets were actually substitute assets. Contrary to Dufresne's argument, the district court never indicated such a belief.

Disposing of substitute assets that a defendant knows are subject to forfeiture may be grounds for an obstruction of justice enhancement. See U.S.S.G. § 3C1.1; United States v. Keeling, 235 F.3d 533, 536-37 (10th Cir. 2000). Dufresne maintains that unlike the defendant in Keeling, where the government filed a notice of lis pendens covering the assets at issue and designated them as substitute assets, see id. at 536, Dufresne did not know the Mustang and the motorcycle were subject to forfeiture. Dufresne asserts "the forfeitability of a substitute asset . . . is not immediately apparent to the average person," and

the "substitute asset" provision in the plea agreement only reserved the Government's right to seek such assets at some future date, it did not, in and of itself, vest an interest in the Government to those assets or impose a duty on Mr. Dufresne to preserve those assets for forfeiture.

The district court did not clearly err in finding Dufresne obstructed justice by selling the Mustang and attempting to sell the motorcycle, which were substitute

-5-

assets subject to forfeiture,[2] because (1) the plea agreement broadly defined forfeitable assets as including substitute assets; (2) Dufresne admitted to defrauding investors out of over $5 million, but the plea agreement referred to specific assets totaling only $623,900; and (3) Dufresne's use of third parties to dispose of the assets suggests he was trying to conceal the transactions. As the district court said, "If [Dufresne] was uncertain as to what property was subject to forfeiture, it was his responsibility to inquire." See Keeling, 235 F.3d at 537.

Dufresne contends that, even if he knew the Mustang and motorcycle were subject to forfeiture, the enhancement was improper because Dufresne "did not significantly obstruct the Government's ability to ultimately locate and/or seize the items." Assuming the obstruction was not significant, this contention is without merit because U.S.S.G. § 3C1.1 plainly encompasses unsuccessful attempts to obstruct justice.

An enhancement for obstruction of justice is proper where a defendant intentionally "attempt[s] to minimize and conceal his assets" during "the presentence investigation for purposes of determining [the defendant's] ability to pay fines or restitution." United States v. Anderson, 68 F.3d 1050, 1056 (8th Cir. 1995). Dufresne testified he lost (or had stolen from him) the proceeds from selling the Mustang, testimony the district court found to be a dishonest attempt to conceal the proceeds. We defer to the district court's credibility finding on this point. See United States v. Ardolf, 683 F.3d 894, 901 (8th Cir. 2012). Dufresne's false deposition testimony is analogous to lying during a presentence investigation because the purpose of the deposition was to locate assets for forfeiture and restitution, an important, mandatory component of Dufresne's sentencing. See 18 U.S.C.

---

[2]Dufresne's suggestion that the district court did not find Dufresne knew the Mustang and motorcycle were subject to forfeiture is incorrect. By finding not credible Dufresne's statement that he did not know these assets were subject to forfeiture, the district court effectively found Dufresne knew they were forfeitable.

§§ 982(a)(1), 3663A.  The district court properly enhanced Dufresne's sentence on this basis.[3]

### B.    Acceptance of Responsibility

Dufresne proposes we should remand to allow the district court to determine whether to reduce his sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 "without regard to what the [district court erroneously] believed was obstructive behavior."  The district court properly enhanced Dufresne's sentence for obstruction of justice under U.S.S.G. § 3C1.1, and

> [c]onduct resulting in an enhancement under § 3C1.1 [for obstruction of justice] ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1, cmt. n.4.  Dufresne has not argued his case is extraordinary and cannot satisfy his "burden to establish that he clearly demonstrated" he is entitled to a reduction for acceptance of responsibility.  United States v. Wineman, 625 F.3d 536, 538 (8th Cir. 2010).  The district court did not err in refusing to reduce Dufresne's sentence pursuant to U.S.S.G. § 3E1.1.

---

[3]Dufresne claims "the district court did not base the enhancement for obstruction of justice on [Dufresne's] deposition answers," but rather "based it on his disposition of assets."  The district court, in part, based its obstruction of justice decision on Dufresne's deposition testimony where Dufresne had said "he lost [the Mustang proceeds] in a drunken stupor," finding Dufresne not credible in asserting in his deposition "that he did not know the [M]ustang or the motorcycle were subject to forfeiture, or that he lost the proceeds from the sale of the [M]ustang."  Dufresne is incorrect on this claim.

## III. CONCLUSION

We affirm the district court.

_____